Thelma WARD, Lois Ann Todd, and Ruth E. Mayhue, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 81–0650–CV–W–1.

United States District Court, W.D. Missouri, W.D.

April 15, 1983.

James Marshall Smith, Legal Aid of Western Mo., Kansas City, Mo., for plaintiffs.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEY'S FEES AND OTHER EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

JOHN W. OLIVER, Senior District Judge.

I.

This case pends on plaintiffs' application for attorney's fees and other expenses pur-

suant to Section 204(a) of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (West Supp.1981). The parties stipulated on January 13, 1983 that plaintiffs' counsel, of the office of Legal Aid of Western Missouri, has expended a minimum of 49.25 hours in the preparation and handling of this case and that the requested sum of $3,693.75 is reasonable. However, that stipulation expressly stated that "defendant does not concede that an award of attorney's fees is appropriate in this case and in fact contests the same." We grant plaintiffs' application for the reasons stated in this memorandum opinion.

## II.

Plaintiffs' complaint, filed August 27, 1981, challenged the alleged failure of the Social Security Administration (SSA) to promptly process their Supplemental Security Income (SSI) claims under Title XVI of the Social Security Act, Section 1631(c)(2), 42 U.S.C. § 1383(c)(2); the Administrative Procedure Act, 5 U.S.C. §§ 554, 555 and 701, et seq.; and the due process clause of the Fifth Amendment to the United States Constitution. Jurisdiction was premised on 28 U.S.C. §§ 1361, 1331 and 42 U.S.C. §§ 1383(c)(3), 405(g). The complaint prayed for declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202 and Rule 65 of the Federal Rules of Civil Procedure, and certification of a class action under Rule 23(a) and (b)(2), Fed.R.Civ.P.; the proposed class to encompass Region VII of the Department of Health and Human Services (HHS) (Missouri, Kansas, Nebraska and Iowa). The three named plaintiffs, residents of Jackson County, Missouri, alleged that they had requested hearings before the defendant relating to non-disability issues, but that decisions on their claims were not reached within ninety days of the requests. The alleged class was to include all persons similarly situated within the specified geographical region. On December 15, 1982, the parties filed a stipulated dismissal without prejudice under Rule 41(a)(1)(ii), Fed.R. Civ.P. The stipulated dismissal expressly preserved for judicial resolution any application by plaintiffs for attorney's fees.

Defendant contests plaintiffs' application for attorney's fee on three separate grounds: (1) that its position in this litigation was substantially justified; (2) that plaintiffs were not "prevailing parties," and (3) that plaintiffs did not "incur" attorney's fees within the meaning of the EAJA. We will treat those grounds in reverse order.

### A. Fees Incurred by Plaintiffs

Section 2412(d)(1)(A) of Title 28, United States Code, provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[1]

Defendant contends that because plaintiffs in this case were represented on a *pro bono* basis by Legal Aid of Western Missouri, "they did not incur attorney's fees or other expenses within the meaning of the EAJA." Defendant's response in opposition at p. 5.

With near unanimity, those courts that have been faced with the issue have concluded that prevailing parties represented by legal aid organizations may qualify for attorney's fees under the EAJA. *See Hornal v. Schweiker,* 551 F.Supp. 612 (Tenn. 1982); *Underwood v. Pierce,* 547 F.Supp. 256 (C.D.Cal.1982); *Hoang Ha v. Schweiker,* 541 F.Supp. 711 (N.D.Cal.1982); *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.

---

1. Plaintiffs have not requested fees and expenses under § 2412(b), which provides for discretionary fee awards under common law principles, *viz.* the common benefit/common fund and bad faith exceptions to the American Rule. *See generally,* J.C. Dods & T.J. Kennedy, *"The Equal Access to Justice Act,"* 50 U.M.K.C. L.Rev. 48, 58 (1981).

1982); *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982); *Scruggs v. Schweiker,* No. 80–3041 (M.D.Tenn., slip op. October 28, 1982).

Defendant relies upon an alternative holding in an unpublished memorandum opinion, *Cornella v. Schweiker,* 553 F.Supp. 240 (D.S.D.1982), which relied heavily upon a slip opinion by Judge Coffrin in *Kinne v. Schweiker,* No. 80–81 (D.Vt. June 30, 1982) *(Kinne II).* *Kinne II* was subsequently vacated in *Kinne v. Schweiker,* No. 80–81 (D.Vt. Dec. 29, 1982) *(Kinne III),* wherein Judge Coffrin expressly disavowed his earlier conclusion as inconsistent with the remedial purposes of the EAJA and instead followed *Hornal v. Schweiker, supra,* which had specifically rejected *Kinne II.*

The EAJA must be read consistent with its remedial purpose to reduce the strong economic deterrents to contesting unreasonable government conduct. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5, 10–11, *reprinted in* 1980 U.S.Cong. & Adm.News at 4953, 4984, 4989–90. That remedial purpose would not be served by excluding from the EAJA's purview those cases in which the contesting parties are represented by legal aid organizations. Moreover, other provisions of the EAJA militate against such a conclusion. Section 2412(d)(1)(B), which outlines the procedures to be followed in fee applications under § 2412(d), makes reference to "an itemized statement from *any* attorney or expert witness representing or appearing in behalf of the party." (Emphasis added) Section 2412(d)(2)(A) provides for computation of fees and expenses based upon prevailing market rates without reference to the fee arrangement between attorney and client. *See* H.R.Rep. No. 96–1418, *supra,* at 4994. It would therefore be anomalous to read § 2412(d) as turning on the technicalities of any private fee arrangement.

We can discern no sufficient basis under the EAJA for departing from the rule enunciated in *Oldham v. Ehrlich,* 617 F.2d

163, 168 (8th Cir.1980).[2] Accordingly, we find and conclude that plaintiffs have incurred attorney's fees and expenses in this case within the meaning of § 2412(d)(1)(A).

### B. *Prevailing Parties*

Defendant contends that plaintiffs cannot be found to have prevailed in this case because "the parties were never on truly opposite sides of an issue" and because "the Stipulated Dismissal did not call for the Social Security Administration to do anything substantially different from what it was already doing to assure prompt hearings in compliance with the Act [42 U.S.C. § 1383(c)(2) ]." Defendant's response in opposition at pp. 4–5.

In support of this contention, defendant makes reference to the regulations implementing § 1383(c)(2) codified at 20 C.F.R. § 416.1453(b) (1981). Those regulations, however, are not nearly so detailed as the provisions of the stipulated dismissal. More important, the regulations do not establish procedures for implementation of § 1383(c)(2); rather they are interpretive: providing, for example, for an exception where good cause is shown. *See* §§ 416.1453(b)(1)(ii) and (2).

The stipulated dismissal, on the other hand, provides detailed and enforceable procedures designed to effectively implement section 1383(c)(2), including: screening of cases by the Hearing Office Manager; specially marking 90-day cases; prompt assignment of cases to an Administrative Law Judge (ALJ) within ten days of a hearing request; requiring ALJ travel to hear certain 90-day cases; maintenance of lists of 90-day cases by the Hearing Office Manager and weekly monitoring of those lists by the ALJ in charge; issuance of an action memorandum to ensure timely receipt of hearing requests; and preparation, for filing in this Court, of two consecutive reports demonstrating the effectiveness of the stipulated procedures in the actual processing of 90-day cases.

---

2. *Oldham* involved the Civil Rights Fees Awards Act of 1976, 42 U.S.C. § 1988. Both § 2412(d) and § 1988 refer to attorneys' *fees.*

We note that, strictly speaking, no *fees* are incurred by any party being represented *pro bono.*

The stipulated dismissal in this case was obviously patterned on the almost identical stipulated dismissal in *Quintana v. Harris,* No. 78–397–JB (approved and ordered by the district court on May 8, 1981), a case prosecuted by New Mexico Legal Services. Plaintiffs aver that the stipulated procedures were effective in arresting the delay in that jurisdiction.[3]

■ We find and conclude that plaintiffs have substantially achieved their objectives in this litigation. *See United States for Heydt v. Citizen's State Bank,* 668 F.2d 444, 447 (8th Cir.1982). This case clearly served as the catalyst for defendant's agreement to enforceable and verifiable procedures designed to implement § 1383(c)(2). *See United Handicapped Federation v. Andre,* 622 F.2d 342, 347 (8th Cir.1980); *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir.1980). Defendant has contended all along—and indeed argues that he was substantially justified in contending—that § 1383(c)(2) is properly construed as directory only. The obvious effect of the stipulated dismissal, however, is to affirm this Court's jurisdiction over the stipulated procedures for processing non-disability SSI claims. For manifestly this Court has the power, and if necessary would have the duty, to enforce the provisions of the stipulated dismissal. *See ARO Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.1976), *cited in* 5 J. Moore,

Moore's Federal Practice § 41.02[4] (2d ed. 1976).

For the reasons stated, we find and conclude that plaintiffs were prevailing parties in this case.

### III. *Substantial Justification*

#### A.

In this part of our memorandum opinion, it will be necessary to set out in some detail the procedural history of the case. The files and records in this case establish that plaintiffs filed a motion for leave to proceed *in forma pauperis,* for preliminary injunction and for class certification, on July 31, 1981. Leave so to proceed having been granted, the complaint was filed on August 27, 1981. On November 2, 1981 defendant filed his motion to dismiss supported by suggestions. That motion contended (1) that the complaint was moot because, by that time, the named plaintiffs had received administrative hearings and decisions on their claims; (2) the complaint failed to state a claim upon which relief could be granted because the language of 42 U.S.C. § 1383(c)(2) is best construed as directory, not mandatory; and (3) the proposed class failed to meet the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

Then district court Judge John R. Gibson, to whom the case was assigned in October of 1981, denied defendant's motion to dis-

---

**3.** Defendant suggests that besides the regulations codified in 20 C.F.R. § 416.1453, the SSA had voluntarily implemented other effective procedures substantially similar to those provided in the stipulated dismissal. In support of this contention, defendant refers to its answer to plaintiffs' interrogatory number 13, filed October 23, 1981, which attached sections of the SSA Claims Manual, § 7140 *et seq.,* (Attachment E), concerning requests for hearings and district office procedures for processing them; a Bureau of Hearings and Appeals policy memorandum dated June, 1974 (Attachment F), detailing procedures to be followed in development centers for processing 90-day cases (defendant recognizes that such centers have been disbanded but asserts that the instructions are still applicable); information memoranda of August, 1978 (A78–07) (Attachment G) and June, 1979 (A79–10) (Attachment H), containing further guidelines for processing non-disability SSI cases; notice form HA–648 (Attach-

ment I), used to identify SSI 90-day cases; and the OHA Handbook, Part I, Chapter 313 (Attachment J), dealing specifically with processing Title XVI non-disability cases.

These attachments do not establish that the stipulated dismissal "did not call for the Social Security Administration to do anything substantially different from what it was already doing to assure prompt hearings in compliance with the Act." Experience establishes that directives are not always followed and the existence of directives does not stand as evidence of their proper implementation. The national statistics attached to defendant's answer to plaintiffs' interrogatories as Attachment C, while not dispositive, are nevertheless sufficient to raise serious doubts about the efficacy of the aforementioned directives. Surely the Court is entitled to presume that stipulated procedures, enforceable by this Court, may be in some wise effective to ameliorate an apparent problem of delay that, evidently, gave rise to this litigation.

miss on April 16, 1982, concluding that the Court had jurisdiction (*citing* 42 U.S.C. § 405(g); *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176 (1979) and 42 U.S.C. § 1383(c)(3)); that the case was not moot, the same mootness argument having been rejected in *White v. Mathews*, 559 F.2d 852 (2d Cir.1977), *cert. denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978) (*and citing Sosha v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Blankenship v. Secretary of HEW*, 587 F.2d 329 (6th Cir. 1978)); and that dismissal of the case would have been improper even if § 1383(c)(2) were properly construed as directory only (*citing* 42 U.S.C. § 1383(c)(1); *Barnett v. Califano*, 580 F.2d 28 (2d Cir.1978) (delay in processing SSI disability claims, for which no time limit was prescribed, held to deny claimants "reasonable ... opportunity for a hearing" as required by 42 U.S.C. § 1383(c)(1)); 5 U.S.C. §§ 555(b) and 706(1) of the Administrative Procedure Act; and *Blankenship v. Secretary of HEW, supra,* at 331 (noting, but not reaching, the due process issue addressed by the district court in that case)).

Judge Gibson affirmed this Court's jurisdiction "[to] give substance to the right to 'prompt adjudication of claims' ... even absent express statutory time limits" (*citing Caswell v. Califano*, 583 F.2d 9, 16 (1st Cir.1978) and *Cockrum v. Califano*, 475 F.Supp. 1222, 1239 (D.D.C.1979)). He expressly found that "the plaintiffs had experienced delays ranging from 174 to 310 days" and that "such delays may be unreasonable;" hence, he found it unnecessary to rule on defendant's contention regarding § 1383(c)(2). Noting that the case would soon be transferred to another Division of the Court, Judge Gibson also refrained from ruling on plaintiffs' motion for class certification.

On May 28, 1982, plaintiffs filed a motion to compel interrogatory answers. On June 24, 1982, the case was transferred to the undersigned judge. On August 6, 1982, we issued a memorandum and orders directing further proceedings, in part II of which we noted that the cases cited by Judge Gibson clearly established that "the pending case is not the first case in which alleged delay in the adjudication of Social Security claims have been the subject of litigation." We further noted that:

Principles stated by the Supreme Court in *Califano v. Yamasaki, supra,* and cases decided by the Eighth Circuit and by this Court establish that the questions presented in this case should be litigated as a class action. *See Like v. Carter*, 448 F.2d 798 (8th Cir.1978), in which the Eastern District of Missouri was reversed for failure to have permitted plaintiffs to maintain a class action. *See also, Thompson v. Walsh*, 481 F.Supp. 1170 (W.D.Mo. 1979), affirmed and remanded for revision of the injunction granted in *Thompson v. Freeman*, 648 F.2d 1144, 1148 (8th Cir.1981). *See also Chambly v. Freeman*, 478 F.Supp. 1221 (W.D.Mo.1979), affirmed without publication of opinion, 624 F.2d 1108 (8th Cir.1980); *cert. den.* 450 U.S. 936, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981).

And *see* finally, *Johnson v. Mathews*, 539 F.2d 1111, 1125, fn. 23, (8th Cir.1976), in which the Eighth Circuit concluded that the action there involved was maintainable as a class action in spite of the fact that the Eastern District of Missouri had made no explicit finding under Rule 23 of the Rules of Civil Procedure.

In part III of our memorandum and orders, we noted that plaintiffs had stated in their suggestions in opposition to defendant's motion to dismiss that it may have been appropriate for the Court to carve out a subclass of the class identified in plaintiffs' complaint, comprised of those claimants who may have been responsible for delays in processing their own claims. We stated that "we do not anticipate either any difficulty or necessity for creation of a subclass." We did express some concern regarding the geographical boundaries of the proposed class. We expressed the hope, however, that counsel would be able to agree upon "proper certification of a class which will include all residents of the State of Missouri."

In part IV of our memorandum and orders, we directed counsel to confer and attempt to reach agreement on appropriate procedures to consolidate consideration of plaintiffs' prayers for preliminary and permanent equitable relief. We also directed consideration of whether the case would be appropriate for submission on the basis of a full factual stipulation and cross motions for summary judgment. In part V of our memorandum and orders, we deferred ruling on plaintiffs' motion to compel pending a pretrial conference to be convened after the parties had had appropriate opportunity to confer as ordered in part VI of our memorandum and orders.

On August 31, 1982, the parties filed a joint report pursuant to our August 6, 1982 memorandum and orders. That report stated that defendant continued to resist certification of any class and that plaintiffs continued to assert that a regional class would be appropriate, but would not object to certification of a Missouri class. Counsel also reported a good likelihood that the case could be presented on a stipulated record and that counsel for plaintiffs was then in the process of drafting a proposed stipulation.

A pretrial conference, convened on September 28, 1982, was continued by the Court in view of the fact that we found that counsel were then diligently working toward a settlement. A further joint report, filed November 9, 1982, reflected the fact that the parties were continuing to work toward a settlement. The stipulated dismissal reflecting the parties' settlement was filed on December 15, 1982.

### B.

Section 2412(d)(1)(A) provides that "a court shall award to a prevailing party other than the United States ... *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust." (emphasis added) Defendant has not contended that any "special circumstances" would make an award in this case "unjust." Rather, he contends his "position" in this case was "substantially justified." The relevant legislative history provides:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its cause had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government ...
>
> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing. Furthermore, the Government should not be held liable where "special circumstances would make the award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. [House Report, *supra,* at 4989–90]

*Quoted in United States for Heydt, supra,* 668 F.2d at 447–48. The above cited legislative history establishes that once a court has found that a party other than the United States has prevailed in the litigation, the burden then shifts to the government to "show that its cause had a reasonable basis both in law and in fact." This does not create a presumption against the reasonableness of the government's position simply because another party has prevailed. It does, however, require the government to come forward and demonstrate the reasonableness of its case.[4]

---

4. Defendant makes the argument at page 3 of its response in opposition that inasmuch as the "substantially justified" language of Rule 37(a)(4), Fed.R.Civ.P. was adopted *in haec verba* in § 2412(d)(1)(A), *see* H.R.Rep. No. 96–1418, *supra,* at 4992, 4997, case law under Rule

In *United States for Heydt, supra,* the government was held to have successfully shouldered that burden. In that case, Armin Moss and the United States Taxpayers Union (USTU) had intervened to contest an action by the United States to enforce an IRS subpoena. The intervenors claimed that release of the subpoenaed documents would violate their First Amendment rights of association. They succeeded in narrowing the scope of the summons; the Court of Appeals thus took issue with the district court's conclusion that the intervenors were not prevailing parties. The government's position in attempting to enforce the summons, though not entirely successful, was found to have been substantially justified in that the district court had specifically found that the summons in that case had been issued in good faith and for a proper purpose.

█ Defendant in this case has not borne the burden of showing that its position was substantially justified. The case was brought by the plaintiffs to challenge alleged delays in the processing of nondisability claims under the Supplemental Security Income program of the Social Security Act. Defendant contended all along that the case was moot; that plaintiffs did not state a claim upon which relief could be granted; and that the case was inappropriate for class certification. Judge Gibson, however, reached the obvious conclusion that the government should not be permitted to "avoid review by the simple expedient of granting hearings [or expediting decisions]

to plaintiffs who seek, but have not yet obtained, class certification." He noted that "the same mootness argument" had been rejected in *White v. Mathews, supra;* and that clearly the Court had the power "to give substance to the right to prompt adjudication of claims" even in the absence of an enforceable mandate under § 1383(c)(2).

After the case had been transferred to this division, we noted in our memorandum and orders of August 6, 1982, that the cases cited by Judge Gibson "reflect that the pending case is not the first case in which alleged delay in the adjudication of Social Security claims has been subject to litigation." We concluded in regard to class certification that "principles stated by the Supreme Court in *Califano v. Yamasaki, supra,* and cases decided by the Eighth Circuit and by this Court establish that the questions presented should be litigated as a class action."

Defendant accurately states that the Court has not ruled on his proffered construction of § 1383(c)(2). That fact, however, does not establish that defendant's position in this case was substantially justified; for it is obvious that defendant's position in this case was not merely or even primarily to establish as law his proffered construction of § 1383(c)(2), but rather to oppose plaintiffs' attempt to invoke the exercise of this Court's jurisdiction to determine whether unreasonable delays were in fact occurring and, if so, to grant effective, remedial relief.[5] We find and conclude that

37 is applicable in this case. Defendant suggests that his position must therefore be found "substantially justified" absent a finding of capricious or frivolous conduct, an indefensible position, or lack of good faith.

We find and conclude that the applicable standard to be applied in this case was set forth in the legislative history quoted in *United States for Heydt, supra. See also Berman v. Schweiker,* 531 F.Supp. 1149, 1154 (N.D.Ill. 1982) ("The standard falls in between the common law 'bad faith' exception and an automatic award of attorney's fees to prevailing parties."); (*Wolverton v. Schweiker,* 533 F.Supp. 420, 425 (D.Idaho 1982) and *Hornal v. Schweiker,* 551 F.Supp. 612, 617 (D.Tenn.1982) (the

standard is slightly above one based upon mere reasonableness.)

5. Defendant has not taken the position in his suggestions that delays were in fact not occurring. Defendant does controvert the conclusiveness of the national statistics attached to defendant's answers to plaintiffs' interrogatories, in that the proposed class was not nationwide and the statistics did not account for the exception stated in 20 C.F.R. § 416.1453(b)(2). Moreover, defendant argues, "there has been no finding that any of the named plaintiffs did not fall under that exception."

While all this may be true, it is hard to understand how it can be said to establish that defendant's position in this case was substantially justified.

Judge Gibson only followed established law when he upheld the Court's jurisdiction in this case notwithstanding defendant's proffered construction of § 1383(c)(2).

Defendant moreover has not shown that the remedial relief prayed for by plaintiffs would not have proved necessary in this case. We note that once we had stated our view of this case and the applicable law, particularly in regard to class certification, the parties promptly began settlement negotiations. It is not apparent why the case was not settled until December 15, 1982, in view of the fact that the stipulated dismissal in this case is nearly identical to that entered into between the United States and New Mexico Legal Services in *Quintana v. Harris,* No. 78–397–JB (D.N.M. May 8, 1981). The stipulations, however, "probably would not have materialized had [the Secretary] been confident that the Court would uphold its position." *Underwood v. Pierce, supra,* 547 F.Supp. at 262.

For the reasons stated, we find and conclude that defendant has not borne the burden of showing that his position in this case was substantially justified.[6]

### IV.

Accordingly, it is

**6.** Plaintiffs, in their supplemental suggestions at p. 2, noted that "it is obvious that the defendant defines the term 'position' in a different fashion from the plaintiffs." Plaintiffs contended that "the defendant's failure to process plaintiffs' hearing requests constitutes the 'position' of the Secretary." Defendant, however, argued that the two "defensive pleadings" he filed in the case, an answer and a motion to dismiss, were substantially justified and therefore fees should not be awarded. Defendant's opposition at p. 3.

Plaintiffs candidly noted that "the case law concerning this question (*viz.,* whether the word "position" in § 2412(d)(1)(A) can be said to encompass prelitigation conduct) is split." *Compare Nunes-Correia v. Haig,* 543 F.Supp. 812, 816 (D.D.C.1982); *Moholland v. Schweiker,* 546 F.Supp. 383, 384 (D.N.H.1982); and *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348 (D.D.C.1982), *with Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387 (Fed. Cir.1982); *Operating Engineers Local Union No. 3, etc. v. Bohn,* 541 F.Supp. 486 (D.Utah 1982); and *Alspach v. District Director of In-*

ORDERED that plaintiffs' application for attorney's fees and other expenses pursuant to the Equal Access to Justice Act in the agreed amount of $3,693.75 should be, and the same is hereby, granted.

*ternal Revenue,* 527 F.Supp. 225 (D.Md.1981). Our own research has revealed that the Fourth Circuit has adopted the latter view, *Tyler Business Services v. N.L.R.B.,* 695 F.2d 73, 75 (4th Cir.1982), while the Third Circuit, in a split decision, has adopted the former. *See National Resources Defenses Council, Inc. v. E.P.A.,* decided March 23, 1983 but not yet reported, 51 L.W. 2578.

We have no doubt that in an appropriate case the government's conduct in anticipation of litigation could be characterized as its "position" under § 2412(d)(1)(A). *E.g., Underwood v. Pierce,* 547 F.Supp. 256, 261 (D.Cal.1982) ("In the face of [nine] adverse decisions, HUD apparently took the position that it would pay the subsidies to low-income tenants only under specific court orders.") In the case at bar, however, defendant has not borne the burden of showing that his position in this case was reasonable both in law and in fact once litigation was commenced; therefore we need not and do not reach plaintiffs' contention with regard to defendant's prelitigation conduct.