722 F.2d 1081
 20 ERC 1167, 14 Envtl. L. Rep. 20,070
 ENVIRONMENTAL DEFENSE FUND, INC., National Audubon Society,
National Parks and Conservation Association, and
Defenders of Wildlife, Plaintiffs-Appellees,
v.
James G. WATT, in his official capacity as Secretary of
Interior, G. Ray Arnett, in his official capacity as
Assistant Secretary of Interior for Fish and Wildlife and
Parks, Russell Dickenson, in his official capacity as
Director, National Park Service, F. Eugene Hester, in his
official capacity as Acting Director, U.S. Fish and Wildlife
Service, Defendants-Appellants,
David Harris, in his official capacity as Commissioner of
the Department of Health Services, County of Suffolk,
Mahfouz Zaki, in his official capacity as Director, Division
of Disease Control and Environmental Health and
Environmental Health Services, Suffolk County Department of
Health Services, Joseph Sanzone, in his official capacity as
Superintendent, Bureau of Vector Control, Division of
Disease Control and Environmental Health Services, Suffolk
County Department of Health Services, and Bureau of Vector
Control, Division of Disease Control and Environmental
Health Services, Suffolk County Department of Health
Services, Defendants.
 No. 211, Docket 83-6005.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 14, 1983.
Decided Nov. 30, 1983.
 
 Deborah E. Zwany, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendants-appellants.
 Edward Lee Rogers, Washington, D.C. (Michael J. Bean, James T.P. Tripp, Washington, D.C., of counsel), for plaintiffs-appellees.
 Before KAUFMAN, NEWMAN and DAVIS,* Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 It is now two years since Congress broadened the authority of the federal courts to award attorneys' fees to parties who prevail in litigation against the United States government. The Equal Access to Justice Act ("EAJA") directs courts to award fees and costs to successful parties other than the federal government, unless the government's position is found to be substantially justified, or special circumstances would make such an award unjust.[1] 28 U.S.C. Sec. 2412(d)(1)(A) (Supp. V 1981). Appellees in this case, four national environmental organizations, received a fee award after settlement of their suit challenging the issuance of permits for pesticide application.
 
 
 2
 Appellants urge reversal of that award, arguing the district judge improperly examined the government's prelitigation activity in determining that its position lacked substantial justification. We find it unnecessary to decide that issue, or to reach the grounds on which the district court, 554 F.Supp. 36, based its order granting the fee application. We agree, however, that the government's position was not substantially justified, and therefore affirm.
 
 FACTS
 
 3
 On August 20, 1981, the Environmental Defense Fund ("EDF") and three additional environmental groups filed suit against then-Secretary of the Interior James Watt and other federal officials. The organizations sought to halt the use of chemical pesticides for mosquito control in the Seatuck and Wertheim National Wildlife Refuges on Long Island. They alleged that the Fish and Wildlife Service, in issuing permits for pesticide application, had failed to comply with, inter alia, the National Environmental Policy Act ("NEPA"), 42 U.S.C. Sec. 4321 et seq. (1976), the National Wildlife Refuge System Administration Act, 16 U.S.C. Sec. 668dd et seq. (1976 and Supp. V 1981), regulations promulgated under those Acts, and the Service's "Final Recommendations on the Management of the National Wildlife Refuge System." EDF et al. requested declaratory and injunctive relief barring further insecticide use in the refuges until the government had prepared either an environmental impact statement or environmental assessment as required by NEPA, and had considered all feasible alternatives including biological methods of mosquito control.
 
 
 4
 Counsel for the government opposed appellees' request for a temporary restraining order at an oral hearing the following day. He represented to Judge Pratt that no further spraying would take place without 48 hours' notice to appellees. On that basis, and because of the failure to join Suffolk County as a defendant, the judge denied the application for a TRO. A hearing on appellees' request for a preliminary injunction was scheduled for September 3, 1981. Suffolk County, however, informed the Fish and Wildlife Service on August 28 that it saw no further need for mosquito control measures. As a result, appellants notified the court by letter that the expiration dates of the permits would be accelerated to September 1, and consequently there would be no need for the court to consider a preliminary injunction. Appellees thereafter withdrew their motion for that relief, and the parties initiated negotiations to see if a settlement could be reached.
 
 
 5
 Almost seven months later, on March 26, 1982, a stipulation of settlement was filed. Appellants conceded the major points sought by appellees, including an acknowledgement that the Fish and Wildlife Service's Final Recommendations did govern the use of chemical pesticides in the Seatuck and Wertheim Refuges. They also stipulated that no use of chemical pesticides would be permitted in those areas until the feasibility of using a biological pesticide known as "BTI" had been determined, and compliance with NEPA and the National Wildlife Refuge System Administration Act had been achieved. In accordance with the stipulation, the court entered an order dismissing the action without prejudice on March 29. It retained jurisdiction, however, to consider any application for attorneys' fees and expenses which might be filed.
 
 
 6
 On April 29, 1982, appellees moved for an award of $24,398.27 in attorneys' fees and expenses under Sec. 204(a) of the EAJA, 28 U.S.C. Sec. 2412. Appellants contested the motion on three grounds: (1) appellees were not "prevailing parties" within the meaning of the EAJA, (2) appellees were not entitled to fees because the government's position was "substantially justified," and (3) any award should be limited to services performed after the effective date of the EAJA, which was October 1, 1981. Judge Pratt found against appellants on all three points, and awarded the full amount of fees which appellees had requested.
 
 DISCUSSION
 
 7
 On this appeal, the amount of fees and expenses awarded by the district court is not contested. Appellants also decline to pursue the arguments that appellees do not qualify as prevailing parties, or that only post-October 1, 1981 services could be compensated.[2] Instead, appellants present the sole question whether the district judge erred in considering the position reflected in the underlying agency action--the issuance of the permits--in making the award. Appellants argue that the EAJA permits the court to examine only the government's litigation position. Because the government "promptly" entered settlement negotiations which were ultimately successful, appellants submit that their litigation position must be deemed substantially justified, and the fee award held to be erroneous.
 
 
 8
 The proper interpretation of the word "position" in the EAJA is, indeed, an unsettled question. The circuits are split on the point, and this Court has yet to deal with it. The D.C., Fourth and Federal Circuits have concluded that the statute refers only to the government's position in litigation. Spencer v. NLRB, 712 F.2d 539, 546-57 (D.C.Cir.1983); Tyler Business Services, Inc. v. NLRB, 695 F.2d 73, 75-76 (4th Cir.1982); Broad Ave. Laundry and Tailoring v. United States, 693 F.2d 1387, 1390-91 (Fed.Cir.1982). The Third Circuit, in a divided opinion, held that the court could examine both the government's litigation position and the underlying agency action. Natural Resources Defense Council v. EPA, 703 F.2d 700, 706-12 (3d Cir.1983).
 
 
 9
 We refrain, however, from deciding the issue in the instant case, for we find that the government's position lacked substantial justification on either the underlying action or the litigation position theory.[3] We endorse Judge Pratt's holding, which appellants do not dispute, that the underlying agency position was not substantially justified. As he found, "prior to suit the government made no attempt whatsoever to comply with the legal requirements that the stipulation of settlement now establishes are applicable to the spraying of chemical pesticides on the Seatuck and Wertheim refuges." Environmental Defense Fund, et al. v. Watt, et al., 554 F.Supp. 36, 41 (E.D.N.Y.1982). We are left, therefore, with the question of justification for the government's litigation position.
 
 
 10
 We note at the outset that the government's ultimate acquiescence in a settlement is merely the beginning, not the termination, of our inquiry. The legislative history of the EAJA establishes that a party need not prevail after a full trial on the merits in order to obtain a fee award. Under the statute's more expansive definition, "[a] party may be deemed prevailing if he obtains a favorable settlement of his case." H.R.Rep. No. 96-1418, 96th Cong., 2d Sess. 11 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4990.[4] If, however, by settling a case the government could automatically make its position "substantially justified" and thereby avoid any fee liability, the statute would withdraw with one hand what it proffered with the other.
 
 
 11
 The test for determining whether the government's position is substantially justified is "essentially one of reasonableness."[5] House Report at 10, reprinted in 1980 U.S.Code Cong. & Ad.News 4989. The government bears the burden of demonstrating the justification for its position, id.; S & H Riggers & Erectors, Inc. v. OSHRC, 672 F.2d 426, 430 (5th Cir. Unit B 1982), and a "strong showing" must be made to meet that burden. House Report at 18, reprinted in 1980 U.S.Code Cong. & Ad.News 4997; Natural Resources Defense Council v. EPA, 703 F.2d 700, 712 (3d Cir.1983).
 
 
 12
 In assessing the reasonableness of the government's position, we must examine the full course of the litigation. In our view, the district court erred on this point. First, as a factual matter, the characterization of the case as one in which "the government settled the case shortly after it was initiated," Environmental Defense Fund, et al. v. Watt, et al., supra, 554 F.Supp. at 40, was clearly erroneous. Seven months between hearing and settlement is not a short period considering the scope of the issues involved, the brevity of the resulting stipulation, and the government's acquiescence to appellees' claims as expressed therein. More importantly, we believe the district court committed an error of law in limiting examination of the government's litigation position to its "opposition to plaintiffs' request for the temporary restraining order and its willingness to settle the case once the permits expired." Id. at 41. On the contrary, the litigation position which the court may scrutinize embraces the full period during which the case was pending, including the relatively long period of settlement negotiations.
 
 
 13
 The government may lack substantial justification for its position even though it does not insist upon an unreasonable stance through to the resolution of a case. We share the D.C. Circuit's view on this point:
 
 
 14
 It seems clear that, if the government does not immediately accede to the plaintiff's demand, but instead initially opposes his claims and then at some later stage (e.g., in a pre-trial settlement) surrenders, the United States will be liable for attorneys' fees regardless of which theory [litigation position or underlying action] is applied. Under such circumstances, not only will [sic] government have acted unreasonably, but it will have adopted (at least briefly) a litigation position lacking substantial justification.
 
 
 15
 Spencer v. NLRB, supra, 712 F.2d at 555 n. 58. We find it incumbent upon the government to abandon its opposition to the other party as soon as it becomes apparent that its litigation stance is not substantially justified. See Ellis v. United States, 711 F.2d 1571, 1576-77 (Fed.Cir.1983).[6]
 
 
 16
 The issues at stake in this case were few and discrete. All were resolved in appellee's favor in the stipulation, yet the settlement negotiations consumed a full seven months. We must draw from this the strong inference, reinforced by statements of counsel in oral argument, that the delay was caused by the government's insistence upon positions which appellees opposed and which were not finally incorporated into the stipulation.[7] The government has made no effort to meet its burden by showing justification for its position on the issues responsible for protracting the settlement negotiations.
 
 
 17
 The purposes which Congress sought to achieve in enacting the EAJA support our construction of the "substantially justified" standard in relation to this case. By awarding fees to parties prevailing in litigation against the government, Congress intended to reduce the likelihood that challenges to bureaucratic action would be deterred by the high cost of litigating, particularly given the enormous resources at the government's disposal. Section 202(c)(1), Pub.L. No. 96-481, 94 Stat. 2325; House Report at 5-6, reprinted in 1980 U.S.Code Cong. & Ad.News 4984. Clearly, the government can make lawsuits costly and burdensome to private parties by means of both dilatory trial tactics and insistence upon unjustified demands in settlement negotiations.
 
 
 18
 Our dissenting colleague takes issue with our holding as inhibiting settlement of cases where the government is a party. Nothing in our opinion undermines the principle that settlement should be encouraged in preference to pursuing litigation. We must recognize, however, that Congress struck an accommodation among this and other goals in drafting the EAJA. To encourage private parties to participate, through the legal system, in "refining and formulating public policy", House Report at 10, reprinted in 1980 U.S.Code Cong. & Ad.News 4988, Congress determined that the federal government should not automatically be immunized from fee liability should it choose to settle with an adversary. Supra at 1085.
 
 
 19
 To be sure, when private parties settle a dispute, a court need not scrutinize their agreement to decide whether fee recovery is warranted. Under the EAJA, however, the government qua litigant bears a heavier burden than the private party: It must affirmatively demonstrate substantial justification for its position. A fee award under this standard indeed "penalizes" the government as the dissent suggests, but it also serves the complementary and co-equal purpose of rewarding a successful private litigant for challenging official action in the face of the government's superior resources and expertise. These twin objectives compel a more searching review of the litigation process, even when that process culminates in a settlement, than would otherwise be required.
 
 
 20
 We therefore conclude that no showing of substantial justification has been made as to either the Fish and Wildlife Service's issuance of the pesticide permits or the government's litigation stance in response to EDF et al.'s challenge. We thus concur in the trial court's result, although we reach it by a somewhat different route. We see no reason to question Judge Pratt's finding that the amount sought by appellees was reasonable. Accordingly, we affirm the judgment of the district court awarding EDF et al. $24,398.27 in fees and expenses pursuant to 28 U.S.C. Sec. 2412(d)(1)(A).
 
 NEWMAN, Circuit Judge, dissenting:
 
 21
 If there were Ten Commandments for judges, one of them would surely be "Thou shalt not deter settlements." In this case the majority holds that the positions taken by the United States during settlement of the litigation were not "substantially justified" within the meaning of the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412(d)(1)(A) (Supp. V 1981), and that the Government is therefore liable for the plaintiffs' attorney's fees. I respectfully dissent because (1) the statute does not make liability for fees turn on positions taken during settlement negotiations and (2) if it did, there would have to be a remand in this case to provide an opportunity for the District Court to determine what in fact happened during the settlement negotiations. The majority's unprecedented construction of EAJA and the scrutiny of settlement negotiations required by that construction have a serious potential for inhibiting the orderly settlement of litigation, a result not likely to have been intended by Congress and one to be resisted unless the Congressional mandate is clear.
 
 
 22
 When the plaintiffs' fee application was presented to the District Court, all parties and the Court understood the fee dispute to concern primarily whether the "position of the United States" to be examined for substantiality was limited to the so-called "litigating position," i.e., the position asserted by the Government's lawyers in the courtroom, or could also include the so-called "underlying position," i.e., the position, taken by the agency in the field, that gave rise to the dispute. As the majority recognizes, the Circuits are divided on that question. Compare Spencer v. NLRB, 712 F.2d 539, 546-57 (D.C.Cir.1983) (litigating position only); Tyler Business Services, Inc. v. NLRB, 695 F.2d 73, 75-76 (4th Cir.1982) (same); Broad Avenue Laundry and Tailoring v. United States, 693 F.2d 1387, 1390-91 (Fed.Cir.1982) (same), with Natural Resources Defense Council, Inc. v. EPA, 703 F.2d 700, 706-12 (3d Cir.1983) (underlying position included). See also S & H Riggers & Erectors, Inc. v. OSHRC, 672 F.2d 426, 429 (5th Cir. Unit B 1982) (referring to the Government's "position before this court"). The District Judge stated that if he were to examine only the "litigating position," he would be "compelled to conclude" on the record before him that the Government's position was substantially justified, Environmental Defense Fund, Inc. v. Watt, 554 F.Supp. 36, 41 (E.D.N.Y.1982). Ruling prior to the decisions of the three circuits that have construed EAJA to make pertinent only the "litigating position," the District Judge interpreted the Act to include examination of the "underlying position." Finding that position not substantially justified, he awarded fees. In this Court appellees seek to defend that award solely on the basis that the "underlying position" may be examined.
 
 
 23
 The majority finds it unnecessary to choose between the "litigating position" and the "underlying position" constructions of EAJA. Instead, the Court holds that even if "substantial justification" is to be determined solely from the Government's "litigating position," that position was not substantially justified because settlement negotiations took seven months and there is a "strong inference" that the delay was caused "by the government's insistence upon positions which appellees opposed and which were not finally incorporated into the stipulation." Slip op. at 1086.
 
 
 24
 In my view, determination of the Government's "litigating position" should be based solely on the positions the Government formally takes during the litigation as reflected in its pleadings, motions, arguments, objections, and other representations made on the record in the course of the lawsuit. To assess the length of time of settlement negotiations and to draw inferences as to the likely position of the Government during those negotiations is to create a needless deterrent to settlement. That is especially so in a case like this where, during the pendency of the settlement negotiations, the defendants were taking no adverse action against the plaintiffs. The spraying permits, challenged by the litigation, had been terminated, and the next spraying season would not commence until the following spring, after the settlement was concluded. If a plaintiff is concerned that the Government is protracting settlement negotiations as a ruse to maintain adverse action being taken in the field, it always has the option of breaking off negotiations and moving for default, a step that will require the Government to file a responsive pleading and thereby place on the record its position in the lawsuit. When the Government offers no courtroom opposition whatever to a complaint and promptly enters into negotiations that produce a settlement, sparing the District Court the need to adjudicate any substantive aspect of the case, I think its conduct should be applauded. Instead, the majority condemns the Government and penalizes it with the cost of the plaintiffs' attorney's fees. It will take clearer language than anything I can find in the Equal Access to Justice Act to persuade me that Congress intended such a result.
 
 
 25
 If the Government had taken a position in the litigation opposed to plaintiffs' complaint and thereafter receded from its opposition and settled, the plaintiffs might well have been entitled to attorney's fees as prevailing parties, see H.R.Rep. No. 96-1418, 96th Cong., 2d Sess. 11 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4990. At least the Government's position in the litigation could then be assessed to determine if it was substantially justified, without passing judgment upon and thereby inhibiting the settlement process. I fully agree with the majority that Congress did not intend that the Government "automatically be immunized" from paying fees whenever it settles a lawsuit. I would impose liability every time the settlement followed the assertion of a litigating position that was not substantially justified. That will carry out the congressional purpose of rewarding a litigant for challenging official actions that the Government seeks to defend, without substantial justification, in the courtroom. But I do not agree that fees should be awarded when the Government offers no courtroom opposition at all. The majority endeavors to find some support for its view that "litigating position" includes settlement stance from a comment by the District of Columbia Circuit in Spencer v. NLRB, supra, 712 F.2d at 555 n. 58. The Court there noted that the Government will be liable for the plaintiff's fees if it "initially opposes his claims and then at some later stage (e.g., in a pre-trial settlement) surrenders." That observation provides no support for the award of fees in this case because the Government here did not initially oppose the plaintiffs' claims. The Government has never taken any position in this lawsuit that is adverse to the merits of the plaintiffs' claims. There was no motion to dismiss the complaint, no answer to the complaint, and no challenge in any form to the complaint. The only opposition of any sort was opposition to the request for a temporary restraining order. That request was denied because the Government represented that no spraying would occur without 48 hours' notice to the plaintiffs and because Suffolk County had not been joined as a party defendant. The majority makes no claim that opposition to the requested TRO was not substantially justified.
 
 
 26
 The majority's citation of Ellis v. United States, 711 F.2d 1571 (Fed.Cir.1983), and Ward v. Schweiker, 562 F.Supp. 1173 (W.D.Mo.1983), also provides no support for an examination of settlement positions or duration. In both cases the Government actively litigated in opposition to the plaintiff's claims, filing a motion for summary judgment in Ellis, see Ellis v. United States, 610 F.2d 760 (Ct.Cl.1979), and a motion to dismiss for failure to state a claim in Ward, 562 F.Supp. at 1176. In sum, until today, no court has found the position of the United States not "substantially justified" because of any settlement negotiations, much less negotiations that took place while the Government was neither opposing the plaintiffs' claims in court or acting adversely to the plaintiffs outside the courtroom.
 
 
 27
 If settlement negotiations were an appropriate matter for inquiry under EAJA, the Government would be entitled to have this case remanded to the District Court so that a record could be made as to whether the Government's position during the negotiations was substantially justified. Though the Government has the burden of proving its position to be substantially justified, see Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board, 679 F.2d 64, 68 (5th Cir.1982); H.R.Rep. No. 96-1418, supra, at 10-11, reprinted in 1980 U.S.Code Cong. & Ad.News at 4989-90, it cannot be faulted for not offering evidence of its settlement stance since until today no court had ever held that such evidence was relevant.
 
 
 28
 In the absence of evidence and findings by the District Court as to what actually happened during the negotiations, the majority has, in my view, an insufficient basis for its conclusion that the Government's position was not substantially justified. The majority relies initially on the seven-month period during which the negotiations occurred, rejecting as clearly erroneous the District Court's finding that the case was settled "shortly" after it was filed, 554 F.Supp. at 40. I see no basis for discarding that finding, especially when we know that both sides understood that the problem of spraying was not going to recur until the following spring at the earliest. With the passage of time from September to March having no adverse consequence whatever, the likely inference, in the absence of facts, is that the parties simply exchanged drafts of a consent decree at a pace to suit their own convenience. For all we know the major share of the delay was attributable to the plaintiffs. In any event, seven months is slightly less than the median time for disposing of civil cases in the Eastern District of New York. See Administrative Office of the United States Courts, Federal Court Management Statistics 27 (1983).
 
 
 29
 More disturbing to me is the majority's willingness to draw an inference that the delay was caused by the Government's insistence on unsupportable positions. I see no basis for drawing that inference. We have nothing in the record to indicate the initial basis on which the Government was willing to settle, nor the initial demand of the plaintiffs. Oral argument, on which the majority relies, was not illuminating on this score, primarily because appellate counsel for the Government had not participated in, and had no knowledge of any aspects of, the settlement negotiations. What we did learn from plaintiffs' counsel was that their contention, advanced during the negotiations, that future spraying would require preparation of an Environmental Impact Statement (EIS), 42 U.S.C. Sec. 4332(2)(C)(i) (1976), was not included in the consent decree. The decree commits the Government to compliance with the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4321-4361 (1976 & Supp. V 1981), without any agreement that NEPA would require an EIS if the spraying challenged in this case should recur.
 
 
 30
 Since, until today, no one connected with this litigation thought that the positions taken by the Government during settlement negotiations were relevant to its liability for attorney's fees, there should at least be a remand to permit the Government to show the District Court that its position during the negotiations was substantially justified.
 
 
 31
 My fundamental disagreement, however, is with the majority's ruling that settlement negotiations are even relevant under EAJA. I would assess the Government's "litigating position" solely on the basis of its positions taken on the record in the course of the litigation. And I agree with the views of the Fourth, District of Columbia, and Federal Circuits that only the Government's "litigating position" should be examined in determining under EAJA whether the position of the United States was substantially justified. For these reasons, I respectfully dissent.
 
 
 
 *
 Of the U.S. Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 28 U.S.C. Sec. 2412(d)(1)(A) provides:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 Subsection (d)(2)(A) makes clear that "fees and other expenses" includes reasonable attorneys' fees.
 
 
 [2]
 Were these issues presented to us, we would affirm the district court's disposition of them. A party which settles its case against the government may "prevail" for purposes of a fee award. See text at note 4 and note 4. A comparison of appellees' initial position, as embodied in its complaint, and the provisions of the stipulation of settlement makes quite clear that appellees received most of what they had sought by instituting the litigation. On the second point, the statutory test governing the applicability of the EAJA looks solely at whether the action was pending on the date of enactment of the Act, not at when the services for which compensation is sought were rendered. Pub.L. No. 96-481, Sec. 208, 94 Stat. 2330 (1980). Because this action was pending on October 1, 1981, the fee award may encompass all services performed by appellees. See Natural Resources Defense Council v. EPA, 703 F.2d 700, 712-13 (3d Cir.1983)
 
 
 [3]
 There are three possible interpretations of the statute. Appellant argues that the court may look only at the government's litigation position. Judge Pratt held that he was authorized to scrutinize both the government's litigation stance and the position of the agency. In addition, a third theoretical approach would allow a judge to examine only the agency's position. While this view is discussed in Spencer v. NLRB, supra, 712 F.2d at 15 n. 28, 36, we are not aware of any court which has adopted it. However, by finding the government's position lacking in substantial justification either at the agency level or in litigation, we would reach the same result on any of the three interpretations
 
 
 [4]
 The House report also instructs that the term "prevailing party" be interpreted in a manner "consistent with the law that has developed under existing [fee-shifting] statutes." House Report at 11, reprinted in 1980 U.S.Code Cong. & Ad.News 4990. In this regard, the Supreme Court has established that a party who prevails through a settlement may be awarded fees under 42 U.S.C. Sec. 1988, which governs fee-shifting in civil rights litigation. See Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980)
 
 
 [5]
 Because the Senate Judiciary Committee rejected an amendment which would have changed the pertinent language from "substantially justified" to "reasonably justified," some courts have suggested that the statutory test requires something more than ordinary reasonableness. See, e.g., Spencer v. NLRB, supra, 712 F.2d at 558; Natural Resources Defense Council v. EPA, supra, 703 F.2d at 721 n. 8 (Hunter, J., dissenting)
 
 
 [6]
 We would thus agree with the analysis of the government's litigation position in Operating Eng'rs Local Union No. 3 v. Bohn, 541 F.Supp. 486 (D.Utah 1982). In that case, plaintiffs sued to enjoin performance of work under a road construction contract which stated incorrect wage rates. Nine days later, defendants agreed to modify the contract, and a formal modification was approved the following month. On grounds that "[o]nce the action was filed, the government acted almost immediately to concede all the substantive relief plaintiff sought," id. at 496, the court found the government's litigation position to be substantially justified. We do not, as discussed supra, express any view on that court's interpretations of the word "position."
 
 
 [7]
 Cf. Ward v. Schweiker, 562 F.Supp. 1173 (W.D.Mo.1983). In evaluating the government's litigating position for substantial justification, the court there noted the lack of explanation for the delay in achieving a stipulated settlement, especially when the stipulation ultimately reached was "nearly identical" to one entered in an earlier case. Id. at 1180