Vernice DUBOSE, et al.

v.

Carla HILLS et al.

Claudia WALTER et al.

v.

Carla HILLS, et al.

Janette LITTLE et al.

v.

Carla HILLS et al.

Civ. Nos. H–75–303, H–75–345, H–75–346.

United States District Court,
D. Connecticut.

Sept. 27, 1976.

Dennis J. O'Brien, Norman K. Janes, Willimantic, Conn., for Vernice Dubose et al.

John A. Dziamba, Willimantic, Conn., James C. Sturdevant, Rockville, Conn., for Claudia Walter et al.

Joan E. Pilver, Raymond Norko, Hartford, Conn., for Janette Little et al.

Peter Dorsey, U. S. Atty., Raymond Sweigart, Asst. U. S. Atty., New Haven, Conn., Robert Greenspan, Richard C. Livermore, Dept. of HUD, Washington, D.C., Rolland Castleman, West Hartford, Conn., Paul Michael, Civ. Div., Dept. of Justice, Washington, D.C., Guy DeFrances, Meriden, Conn., James H. Shulman, Hartford, Conn., for Carla Hills et al.

## RULING ON MOTION TO VACATE ORDER AND DISSOLVE PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

These lawsuits, consolidated for trial, concern the refusal of the Department of Housing and Urban Development ("HUD") and its Secretary, Carla Hills, to implement an operating cost subsidy program, enacted as Section 212 of the Housing and Community Development Act of 1974.[1] On December 15, 1975, this court entered a preliminary injunction ordering the implementation of the program.[2] On May 27, 1976, the December order was expanded by a ruling converting plaintiffs' original individual classes, which were certified by project, into a statewide class.[3] The original compliance date of June 1, 1976, has been extended until September 15, 1976, by several orders of this court.

On August 9, 1976, Congress enacted the "Housing and Urban Development and Independent Agencies Appropriation Act," Public Law 94–378.[4] Arguing that the proviso contained in this legislation sheds new light on the issues in this case, the defendants now move to vacate the December and May orders and to dissolve the preliminary injunction. Oral argument was heard on this motion on September 13, 1976.

The Section 236 operating subsidies program is established by 12 U.S.C. § 1715z–1(f)(3) (1970) (Supp. IV).[5] A source of

1. This section amended Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1 (Supp. IV, 1974) *amending* 12 U.S.C. § 1715z–1 (1970). The program provides for the payment of operating subsidies to certain housing projects assisted under Section 236 and may be found at 12 U.S.C. § 1715z–1(f)(3) and (g) (Supp. IV, 1974). *See* notes 5 and 6 *infra*.

2. 405 F.Supp. 1277 (D.Conn.1975). That opinion contains a more exhaustive treatment of the factual background and statutory scheme involved in these actions.

3. On May 20, 1976, a similar nationwide class was certified by Judge Pratt in *Underwood v. Hills,* D.C., 414 F.Supp. 526. However, that class was amended to exclude the Connecticut statewide class on June 7, 1976.

4. Pub.L. No. 94–378 (Aug. 9, 1976) provides in relevant part:
   "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* that the following sums are appropriated, for the Department of Housing and Urban Development, and for sundry independent executive agencies, boards, bureaus, commissions, corporations, and offices for the fiscal year ending September 30, 1977, and for other purposes, namely:
   * * * * * *
   HOUSING PAYMENTS
   For the payment of annual contributions, not otherwise provided for, in accordance with section 5 of the United States Housing Act of 1937, as amended (42 U.S.C. 1437c); for payments authorized by title IV of the Housing Act of 1950, as amended (12 U.S.C. 1749 et seq.); for rent supplement payments authorized by section 101 of the Housing and Urban Development Act of 1965, as amended (12 U.S.C. 1701s); for payments as authorized by sections 235 and 236, of the National Housing Act, as amended (12 U.S.C. 1715z, 1715z–1); and for payments as authorized by section 802 of the Housing and Community Development Act of 1974 (88 Stat. 633), $2,975,000,000: *Provided, That excess rental charges credited to the Secretary in accordance with section 236(g) of the National Housing Act, as amended, shall be available, in addition to amounts appropriated herein, for the payments on contracts entered into pursuant to the authorities enumerated above.*" (Emphasis added to proviso).

5. 12 U.S.C. § 1715z–1(f)(3) provides:
   "For each project there shall be established an initial operating expense level, which shall be the sum of the cost of utilities and local property taxes payable by the project owner at the time the Secretary determines the property to be fully occupied, taking into account anticipated and customary vacancy rates. At any time subsequent to the establishment of an initial operating expense level, the Secretary is authorized to make, and contract to make, additional assistance payments to the project owner in an amount up to the amount by which the sum of the cost of utilities and local property taxes exceeds

funds for these operating subsidies is provided by subsection (g) of the same statute which establishes a "reserve fund" comprised of "excess rentals" collected by the Section 236 project owners.[6] The central issue throughout this litigation has been the nature and scope of the Secretary's discretion with respect to the implementation of the operating subsidies program and the expenditure of the reserve fund. The issuance of the preliminary injunction was premised upon this court's conclusion that the implementation of the program and the expenditure of the reserve fund for operating subsidies was mandated by the statute.

The defendants now contend that Public Law 94–378 affects my earlier determinations in two ways. First, they argue that this statute "makes it plain that contract authority is required before any of the amounts contained in the reserve fund may be utilized."[7] Secondly, the defendants assert that the recent act entirely transforms the function of the reserve fund by making it available for a variety of programs other than operating subsidies. The essence of both arguments is that the proviso indicates that the Secretary has discretion to refrain from implementing the operating subsidies

program and hence affords a basis for vacating the December and May orders and dissolving the preliminary injunction.

### I.  Contract Authority

The defendants' first contention is a renewal of an argument presented at the time of the December ruling. The Secretary's position is that she requires "contract authority" before she may implement the operating subsidies program; that the existing contract authority is limited in amount and is insufficient to fund all the programs established by Section 236; that she possesses the discretion to allocate the existing contract authority among the several 236 housing programs; and that she has reasonably concluded to allocate the existing contract authority to other 236 programs instead of the operating subsidies program.[8]

The premise of this argument is that the reserve fund can be spent only pursuant to contract. In my earlier consideration of this issue, I reviewed the statutory language and the legislative history and concluded that "direct payments can be made out of the reserve fund, not pursuant to any contract and, hence, without reducing the

---

the initial operating expense level, but not to exceed the amount required to maintain the basic rentals of any units at levels not in excess of 30 per centum, or such lower per centum not less than 25 per centum as shall reflect the reduction permitted in clause (ii) of the last sentence of paragraph (1), of the income of tenants occupying such units. Any contract to make additional assistance payments may be amended periodically to provide for appropriate adjustments in the amount of the assistance payments. Additional assistance payments shall be made pursuant to this paragraph only if the Secretary finds that the increase in the cost of utilities or local property taxes, is reasonable and is comparable to cost increases affecting other rental projects in the community."

**6.** 12 U.S.C. § 1715z–1(g) provides:
"The project owner shall, as required by the Secretary, accumulate, safeguard, and periodically pay to the Secretary all rental charges collected in excess of the basic rental charges. Such excess charges shall be credited to a reserve fund to be used by the

Secretary to make additional assistance payments as provided in paragraph (3) of subsection (f) of this section. During any period that the Secretary determines that the balance in the reserve fund is adequate to meet the estimated additional assistance payments, such excess charges shall be credited to the appropriation authorized by subsection (i) of this section and shall be available until the end of the next fiscal year for the purpose of making assistance payments with respect to rental housing projects receiving assistance under this section. For the purpose of this subsection and paragraph (3) of subsection (f) of this section, the initial operating expense level for any project assisted under a contract entered into prior to August 22, 1974, shall be established by the Secretary not later than 180 days after August 22, 1974."

**7.** Federal Defendants' Memorandum in Support of Motion To Vacate Order and Dissolve Preliminary Injunction ("Memo in Support") at 4.

**8.** Memo in Support, at 2.

Secretary's available contract authority." [9] However, the defendants now argue that the proviso of Public Law 94–378, which states that the reserve fund shall be available "for the payments on contracts entered into pursuant to the authorities enumerated above," supports their position that the reserve fund can only be spent pursuant to contract authority.

■ The defendants place too much weight upon the proviso's reference to contracts. The language merely recognizes that many of the programs enumerated in Public Law 94–378, including interest reduction payments under the Section 236 program, do require the obligation of contract authority prior to the expenditure of appropriations. However, I conclude that the proviso does not indicate that the reserve fund can *only* be spent pursuant to contract.

There is a second response to the defendants' contract authority argument. In Part IV of the December opinion, I dealt with the possibility that the reserve fund can be spent only pursuant to contract and that the disbursements are subject to the Secretary's allocation of contract authority. While I recognized that such a construction would give the Secretary some discretion, I held that a decision not to implement the program would be contrary to Congressional intent and would constitute an unreasonable exercise of that discretion.[10] Thus, even if the proviso did indicate that the reserve fund can only be spent pursuant to contract, this would not provide a basis for vacating the earlier orders or for dissolving the preliminary injunction.

II. *Transformation of the Reserve Fund*

An important factor underlying the December ruling was the special funding method for the operating subsidies program. At that time, the reserve fund established by subsection (g) was to be used solely for additional assistance payments under the program. The defendants now argue that the proviso in Public Law 94–378 transforms the function of this reserve fund by giving the Secretary authority to utilize it for a variety of enumerated programs. The contention is that Congress' failure to establish priorities concerning the expenditure of the fund indicates that the Secretary has discretion over its allocation and, therefore, that she is no longer under a mandatory duty to make additional assistance payments directly from the reserve fund. This argument necessitates a study of the legislative intent behind the proviso.

In June 1976, the House Appropriations Committee proposed an appropriation of $2,975,000,000 for payments for subsidized housing programs. This sum was $95,000,-000 less than the budget request. The reduction was based in part on the making available of the money in the reserve fund for a variety of programs other than the operating subsidies program of Section 236.[11] This intent was manifested in the proviso of Public Law 94–378.

In the Senate, Senator Sparkman introduced an amendment which deleted the proviso. In support of this deletion, he stated:

"[T]he Housing Act of 1974 specifically authorized that section 236 funds returned to HUD as excess charges should be used to assist section 236 projects which face financial difficulties, because of increased taxes and utility costs. HUD has failed to carry out this provision despite the specific legislative authority conferred 2 years ago, despite the fact that almost $25 million in excess charges have been returned to HUD, and despite the fact that many projects face financial difficulties and a number have sought remedy under the 1974 provision.

. . .

**9.** 405 F.Supp. at 1287 & n. 46. This conclusion was based in part upon the language of (f)(3) which authorizes the Secretary *"to make,* and contract to make, additional assistance payments . . . " (emphasis added), and in part on the availability of resources in the reserve fund established by (g).

**10.** 405 F.Supp. at 1288–92.

**11.** H.R.Rep. No. 94–1220, 94 Cong., 2d Sess. 7 (1976).

"Several courts have already stated, in cases brought by owners of troubled projects that HUD is required to utilize the returned funds. There are at the present time several judgments against HUD in cases involving more than 20 projects. HUD, however, persists in litigating rather than in obligating the funds authorized under section 236(g)." [12]

Senator Proxmire, floor manager for the bill, concurred with Senator Sparkman.

"I think it is a very good amendment. It is most important that we do our very best to keep the section 236 tax and utility subsidy program going. It is a good program. It is for low-income people.

"All we are asking, as I understand it, is that the money be kept in the program and not distributed elsewhere." [13]

■ Following these comments, the Senate passed the amendment deleting the proviso. However, the final bill reported by the Conference Committee of the House and the Senate contained the House's proviso. The Conference Report explained the Committee's action as follows:

"Amendment No. 3: Restores language proposed by the House and stricken by the Senate making available any excess rental charges under Section 236(g) of the National Housing Act to liquidate contract obligations for a number of programs under the housing payments account.

"The committee of conference is agreed that this action shall not prejudice any

suit now or hereafter before the courts in this area." [14] (Emphasis added).

The legislative history makes it clear that the proviso enables the Secretary to use the 236(g) reserve fund for other than Section 236 programs. However, it also makes clear that Congress did not intend to allow the Secretary to fail to implement the operating subsidies program. The statements of Senators Sparkman and Proxmire are to this effect, as is the statement in the Conference Report that its action "shall not prejudice any suit . . . in this area." Therefore, I conclude that there is no basis for altering my holding that the Secretary is under a mandatory duty to implement the operating subsidies program.

■ I do recognize, however, that the proviso authorizes the Secretary to use the fund for purposes other than 236 programs after October 1, 1976 (the effective date of Public Law 94–378). To the extent my earlier orders and the preliminary injunction are inconsistent with this fact, it is hereby modified. Thus, the Secretary, in her discretion, is free to spend the Section 236(g) funds on other programs after October 1. However, that portion of the fund necessary to maintain a *full* operating subsidies program in Connecticut [15] must be so allocated. Only in this way will the relief granted by my earlier orders not be "prejudiced." [16]

For the foregoing reasons the defendants' Motion to Vacate the Order and Dissolve the Preliminary Injunction is denied.

SO ORDERED.

---

**12.** 122 Cong.Rec. S 10775 (daily ed. June 26, 1976).

**13.** *Id.*

**14.** H.R.Rep. No. 94–1362, 94 Cong., 2d Sess. (1976). 122 Cong.Rec. H 7685.

**15.** On August 31, 1976, Circuit Judges Robb and Wilkey of the United States Court of Appeals for the District of Columbia denied defendants' motion for a stay of the district court's order pending appeal in *Underwood v. Hills.* In so ruling, Judges Robb and Wilkey considered the impact of Public Law 94–378 on that litigation and concluded that "the district court's order does not preclude the Secretary from using the reserve fund to fund programs

other than the operating subsidy program, 12 U.S.C. § 1715z–1(f)(3), to the extent such other funding is authorized in Public Law 94–378." My present ruling reaches a similar result. However, I add that such other payments can be made only if the Secretary's allocation does not "prejudice" the relief granted to plaintiffs in this action.

**16.** The present ruling is not intended to dispose of the plaintiffs' motion for clarification of my earlier orders. That separate motion is still pending decision. The present ruling is concerned only with the impact of Public Law 94–378 on the relief granted in these actions.